## Jones' Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen and Stearne, JJ., and Marx, P. J., twenty-third judicial district.

The facts appear from the adjudication of

MARX, P. J., twenty-third judicial district, specially presiding, auditing judge.—Mary H. Jones, by the seventeenth item of her will, gives and bequeaths to her granddaughter, Mary Maude Howell, $5,000 absolutely "when she attains her twenty-fifth birthday." The residue of her estate is given to the executors in trust, inter alia, "during the respective lifetime of each of my three daughters, Maude J. Howell, May H. Lawrence and Elsie J. Hampson, to pay to her one-third of the net income."

The reason for the filing of the account is that said Mary Maude Howell, now Brown, has attained the age of 25.

By the adjudication upon the executors' first account $5,000 was awarded to the accountants to be held until the said Mary Maude Howell attained the age of 25 years. The balance of the estate was awarded to the trustees appointed by the will.

In an amended adjudication, filed April 3, 1923, by Thompson, J., the court used the following language:

". . . I therefore now direct that the income heretofore allowed on the gift of $5,000 to Mary Maude Howell be paid to those entitled to the income on the

residuary estate of the testatrix, to wit, her three daughters May H. Lawrence, Elsie J. Hampson and Maude J. Howell, in equal shares, for and during the term of their respective lives. . . ."

On February 5, 1924, the principal of the legacy was invested in a $5,000 mortgage secured on premises Nos. 1631-33 North Twenty-second St. The principal of the mortgage was subsequently paid.

On December 2, 1925, the $5,000 was reinvested in a mortgage in that amount secured on premises No. 1627 Ritner Street, Philadelphia.

On the death of Elsie J. Hampson on May 7, 1925, the first account of the trustees was filed and was adjudicated December 22, 1925. In that account it is stated that the $5,000 had been invested in a 6 percent mortgage secured on the northeast corner of Ritner and Chadwick Streets and that the income therefrom is included in the account because in the amended adjudication it is payable to those entitled to the income on the residuary estate. The accountants, however, did not debit themselves with the principal of the mortgage.

In the present account the executors charge themselves with the award of said sum of $5,000. It shows the receipt on account of principal on the mortgage investment secured on premises No. 1627 Ritner Street, Philadelphia, on December 12, 1929, of the sum of $250, thereby leaving a balance in this investment of $4,750.

Mr. Potter, who represents the legatee, in his brief makes the following statement:

"While the account as stated shows the investment of the legacy in this mortgage, examination of the records shows that the $5,000 mortgage on No. 1627 Ritner Street is dated December 1, 1925, and was given to The Commonwealth Title Insurance and Trust Company. The mortgagee is not named in any fiduciary capacity whatever. There is no assignment of record to the executors of the will of Mary H. Jones. By assignment dated March 17, 1933, this mortgage was assigned, with many others, to Provident Trust Company of Philadelphia, as trustee of various trusts. This assignment, however, is subsequent to the time at which the legatee became entitled to actual possession of her legacy."

Efforts have been made by the accountants to collect the balance of principal, $4,750, but without success.

In the income account the executors charge themselves with the receipt of interest to June 1, 1932.

Default in interest occurring in June 1932, the accountants took possession of the property by obtaining an assignment of the lease from the owner.

The income account reflects the payment of income up to and including March 22, 1932. Taxes for all years except 1932 have been paid.

Foreclosure proceedings have not been instituted because the accountants were of the opinion that nothing could be gained by taking this action, because the main purpose to be subserved, to wit, the receipt of rentals, was in the power of the accountants at all times following the default in the payment of interest.

Mr. Potter, in his brief, states that the property is vacant and that no rental has been collected or received.

Mary Maude Howell, now Brown, attained the age of twenty-five on February 17, 1933, and on February 21, 1933, the accountants formally tendered to Sheldon F. Potter, Esq., her attorney, the investment of $4,750 in the form in which it stood and $250 in cash. The offer was declined.

Mr. Bolger, counsel for the accountants, in his brief states that Mr. Potter was requested by the accountants for suggestions as to what should be done

relative to the question of foreclosure and that he replied that no responsibility would be assumed by his client; and the accountants were requested to file an account so that the question of the demand of the legatee that the legacy be paid in cash could be adjudicated.

The account has been accordingly filed.

A pecuniary legacy is payable out of the general funds of the estate and is preferred in the order of payment to a residuary bequest. It is payable in cash unless otherwise directed. Were not that the case, it would be specific. Very frequently the testator uses the word "sum," which serves to make the meaning clearer that he intends that the legatee shall be paid in money. But the use of the word "sum" is not important. The meaning is clear enough even though it is not used. The same principle applies although the legacy is payable in future upon the fulfilment of a condition precedent.

In the instant case there is a gift of $5,000 to the legatee "when she attains her twenty-fifth birthday." No trust is created. The auditing judge originally treated this as a vested gift with payment deferred. Had it been such, a trust would have arisen for the benefit of the legatee and it would have been the duty of the trustee to invest the fund.

When the matter was called to the attention of the auditing judge, he filed an amendment to the adjudication and directed that the income "heretofore allowed on the gift of $5,000 to Mary Maude Howell be paid to those entitled to the income on the residuary estate of the testatrix," naming them.

As it is the duty of an executor to convert and not to invest, whereas it is the duty of a trustee to invest and to distribute the corpus at the time designated, it may be that the award of the $5,000 should not have been made to the executors qua executors but to them as trustees. It is perfectly clear that the auditing judge had no intention of ruling that the cestui que trust was not entitled to payment in cash when she attained the age of 25 years and that she must take in place thereof an investment in said sum.

It is argued in the instant case that it was the duty of the executors qua executors to invest, and because of the award made by the auditing judge it may be conceded that such was the case. But it is clear that the order to invest was made for the benefit of those entitled to the residuary estate and not at all for the benefit of the pecuniary legatee.

The equitable title to the $5,000 was in the residuary legatees, charged with the payment of said sum in cash to the pecuniary legatee upon attaining the age of 25 years; and as a trust was created of the residue, it was improper to allow the sum to go uninvested. None the less, when the time arrived for payment of the legacy it was payable in cash. The auditing judge therefore rules that the said Mary H. Brown is entitled to receive $5,000 in cash, and he further rules that the costs incident to obtaining the ruling cannot be charged against her.

While the petition states that all parties in interest have received notice, it does not state that they have received notice of the question involved, and whether by the use of the words "all parties in interest having either vested or contingent interests" the petitioner intended to convey the idea that those entitled to the income from the residuary estate and those entitled in remainder have received notice is not quite clear. It also appears from the copy of the will attached to the first account of the trustees that unborn persons have an interest in the residuary trust fund.

According to the record, the question raised is one solely between the executors qua executors and the pecuniary legatee.

The auditing judge desires to make it entirely clear that his decision is without prejudice to the rights of those entitled to the income of the residuary

estate and those entitled to the corpus when an account is filed by them as trustees.

The statement in the preceding paragraph does not apply to the costs of filing the account, $35.50. There is sufficient undistributed income on hand out of which these costs can be paid, and the accountants can take out of it sufficient to reimburse themselves for the payment of such costs.

There is, however, not sufficient undistributed income after the payment of these costs to pay the counsel fee of $150. Whatever balance there remains after the payment of costs will be awarded to counsel in part payment of his fee, and if there should prove to be further collections of income, these also are awarded to him until the full amount of his fee is paid. If the undistributed balance of income shown by the account, plus whatever additional collections, are insufficient to pay him in full, he must collect the balance from those who engaged him as counsel.

Accordingly, the principal, $5,000, is awarded to said Mary H. Brown in cash.

*Robert V. Bolger* and *Ralph C. Stewart*, for exceptants.

*Sheldon F. Potter*, contra.

HENDERSON, J., June 30, 1933.—The facts are very fully set out in the adjudication. We concur in the rulings of the auditing judge and for the reasons given by him.

There are certain irregularities in this record to which we shall call attention, but without any thought of ruling thereon. The adjudication upon the executors' account was filed February 15, 1923. This was confirmed absolutely on March 2, 1923.

On April 3, 1923, the auditing judge filed an amended adjudication, unsupported, however, by a petition for review and by due notice to the parties in interest. In this amendment the income from the fund of $5,000 was awarded to the three residuary legatees "for and during their respective lives." From the fact of an award of income the trustees concluded, by implication, it was their duty to invest the said sum of $5,000; and we are informed that about $2,000 of income was paid to the residuary legatees.

It was not the duty of the executors to invest, and the fund should have been held to await the arrival of this legatee at the age of 25 years. Nor were the accountants trustees, and even if they had called themselves such that fact would not have made them trustees. See Pollock's Estate, 306 Pa. 301.

The burden of this provision of the will was cast upon the residuary estate. Those legatees have profited by the irregularity which has occurred, and it may be that a bill for review could be sustained, but as to this we express no opinion.

One thing further requires our attention. Counsel for this legatee objected to the investment because the mortgage was only assigned to this account after the legatee reached the age of 25 years. Counsel for the accountants replies that these facts were not formally proven. They were pointed out to the auditing judge, and he recites them in his adjudication. Be that as it may, the legatee had not the burden of proving the investment improper; her objection was sufficient to cast the burden upon the accountants of justifying the investment.

The exceptions are dismissed and the adjudication is confirmed absolutely, without prejudice to attempt to review the awards in the adjudication and supplemental adjudications.